Robert A. Anderson, ISB No. 2124
Robby J. Perucca, ISB No. 7001
ANDERSON, JULIAN & HULL LLP
C. W. Moore Plaza
250 South Fifth Street, Suite 700
Post Office Box 7426
Boise, Idaho 83707-7426
Telephone:    (208) 344-5800
Facsimile:    (208) 344-5510
E-Mail:       randerson@ajhlaw.com
              rperucca@ajhlaw.com
iCourt/e-File:  service@ajhlaw.com

Attorneys for Defendants


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **MICHAEL TELFORD**, an individual; **TELFORD SUN VALLEY SEED**, assumed business name of Michael Telford and Shannon Telford; **TRIPLE T FARM**, assumed business name of Aaron Telford and Ryan Telford; **TRIPLE T FARMS PARTNERSHIP; TELFORD LANDS LLC; TELFORD AG LLC; MIKE TELFORD VENTURES LLP**, <br><br>                    Plaintiffs, <br> vs. <br><br> **WEST AMERICAN INSURANCE COMPANY**, an Indiana corporation; **LIBERTY MUTUAL GROUP, INC.**, a Massachusetts corporation, <br><br>                    Defendants. | Case No.  4:22-cv-00043-BLW <br><br> **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

COME NOW the above-entitled Defendants, **WEST AMERICAN INSURANCE**

**COMPANY** and **LIBERTY MUTUAL GROUP, INC.** (the "Defendants"), by and through their

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 1

attorneys of record, Anderson, Julian & Hull, LLP, and hereby submit their Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment as follows:

## I.

## <u>INTRODUCTION</u>

Defendants have consistently taken the position that the claims asserted against Plaintiffs (hereinafter "Telford") in a lawsuit filed by Pasco Farming associated with potato seed products sold by Telford are not covered under the applicable CGL policy. While Telford's Motion for Summary Judgment attempts to support its argument for coverage by a selective discussion of non-controlling case law from various and diverse jurisdictions, what is missing from Telford's analysis is a specific discussion of the claims asserted by Pasco Farming or a specific analysis of the coverages and exclusions contained in Telford's insurance policy. As set forth below, when this case is properly framed by the specific allegations in the underlying liability suit upon which Telford seeks defense/indemnity coverage applied to the language in the insurance contract, it is clear that there is no coverage under the policy for the allegations at issue.

## II.

## <u>ARGUMENT</u>

### A.  Legal Standard – An Insurer's Duty to Defend and/or Indemnify its Insured

"The duty to defend and duty to indemnify are separate, independent duties." *Deluna v. State Farm Fire and Cas. Co.*, 149 Idaho 81, 85, 233 P.3d 12, 16 (2008). The duty of an insurer to defend its insured is much broader than its duty to indemnify and "arises upon the filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for liability that would be covered by the insured's policy." *Hoyle v. Utica Mut. Ins. Co.*, 137 Idaho 367, 371–72, 48 P.3d 1256, 1260–61 (2002). "Where there is doubt as to whether a theory of recovery within

the policy coverage has been pled in the underlying complaint, the insurer must defend regardless of possible defenses arising under the policy or potential defenses arising under substantive law governing the claim against the insured." *Construction Mgmt. Sys., Inc. v. Assurance Co. of America*, 135 Idaho 680, 682–83, 23 P.3d 142, 144–45 (2001).

Where an insurer believes it has no duty to defend an insured in a matter after evaluating the allegations in the civil complaint filed against the insured, it may communicate that position to the insured and deny coverage for the claim or file a declaratory judgment action to seek a final determination from the court. *Kootenai Cnty. v. Western Cas. and Sur. Co.*, 113 Idaho 908, 910–11, 750 P.2d 87, 99–100 (1988) (citing *State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D. Idaho 1986) ). Ultimately, however, if a complaint discloses no possibility of coverage, the insurer may properly decline to defend against it. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011).

In making a determination of coverage, "an insurer does not have to look beyond the words of the complaint to determine if a possibility of coverage exists." *AMCO Ins. Co. v. Tri-Spur Inv. Co.*, 140 Idaho 733, 738, 101 P.3d 226, 231 (2004) (citing *Hoyle*, 137 Idaho at 373–74, 48 P.3d at 1256); see also *Cnty. of Boise*, 151 Idaho at 904, 265 P.3d at 517 (This Court has consistently held that insurers need only look at the complaint and read it broadly in order to determine if coverage exists). If an exclusion in a business liability policy clearly and unambiguously excludes certain injuries, an insurer's duty to defend is not triggered. *Construction Mgmt.*, 135 Idaho at 682, 23 P.3d at 146.

Obviously, where there is no duty for an insurer to defend its insured with respect to allegations in a civil complaint, there is also no duty to indemnify the insured with respect to those allegations. See *Hoyle*, 137 Idaho at 375, 137 Idaho at 1264. An insurer's duty to indemnify its

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 3

insured is triggered where the insured becomes liable to a third party to pay damages on claims for which there is coverage under the insurance policy. *Id*.

**B.  Summary of Allegations in the Pasco Farming Complaint**

Pasco Farming, Inc. filed its civil complaint against the Telford Defendants on or about August 25, 2021. See *Declaration of Plaintiffs' Counsel in Support of Plaintiffs' Motion for Summary Judgment*, Exh. B. As set forth above, in order to determine whether a duty to defend exists, we must examine the particular allegations in that pleading. Pasco Farming alleged, as follow:

i.  Mike Telford, individually and as an agent of several related entities, sold Pasco Farming some Payette variety and Ranger variety seed potatoes, which were subsequently planted at Pasco's farms in both Oregon and Idaho. *Pasco Farming Complaint*, ¶ 11.

ii.  Prior to delivering the seed potatoes, Telford treated them with a product known by the brand name "ProGibb LV Plus" and which uses gibberellic acid as an active ingredient. *Id*., ¶ 12.

iii.  When the potato plants began to sprout later that year, they were damaged, exhibiting excessive sprouting, inconsistent tuber lengths and small tuber size. *Id*., ¶ 13.

iv.  Experts who examined the crop determined that the rate and amount of gibberellic acid applied by Telford was excessive and that such application directly caused the excessive sprouting, inconsistent tuber lengths and smaller tube size. *Id*., ¶¶ 14-15.

v.  Telford breached the contract between the parties by delivering seed potatoes that had been excessively treated with gibberellic acid, which caused Pasco to suffer damages such as loss of use of its potato crops, loss of use of the agricultural land upon which

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT- 4**

the seed potatoes were planted, a reduction in crop yields and other consequential damages. *Id*., ¶¶ 17-19.

vi. Telford breached implied/express warranties in that he either impliedly or expressly warranted the appropriateness of its seed potatoes for use in growing crops, Pasco reasonably relied upon such warranties, and Telford breached such warranties by providing seed potatoes that were unfit for use as growing crops, which caused Pasco to suffer damages such as loss of use of its potato crops, loss of use of the agricultural land upon which the seed potatoes were planted, a reduction in crop yields and other consequential damages. *Id*., ¶¶ 22-27.

vii. Telford breached duties in tort owed to Pasco by recklessly and negligently applying an excessive amount of gibberellic acid to the seed potatoes it sold to Pasco, which caused Pasco to suffer damages such as loss of use of its potato crops, loss of use of the agricultural land upon which the seed potatoes were planted, a reduction in crop yields and other consequential damages. *Id*., ¶¶ 30-37.

viii. Telford is strictly liable under Idaho law as a product seller for selling a product with a defective condition, which caused Pasco to suffer damages such as loss of use of its potato crops, loss of use of the agricultural land upon which the seed potatoes were planted, a reduction in crop yields and other consequential damages. *Id*., ¶¶ 40-47.

Ultimately, Pasco Farming filed two contract-based claims, one statutory product liability claim against Telford (which again was based on Telford's actions in contract to provide a product to Pasco) and one tort claim. All of the claims assert the same measure of damages.

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 5

**C.  Applicable Portions of Telford's Policy in Connection with the Claims**

West American Insurance Company issued a policy of insurance which provided coverage for a number of features associated with Telford's commercial farming operations, including farm liability coverage, general liability coverage and excess coverage, pursuant to the following:

Policy Number:  BKW60523830
Effective Dates: 03 / 20/ 2020 -  03/ 20/ 2021

Based on the allegations raised in the Pasco Farming Complaint, it would appear that the analysis in this case centers on whether the Commercial General Liability Coverage Form, version CG 00 01 04 13, provides a basis for coverage. The allegations at issue would not appear to raise coverage under the farm liability coverage form and Telford's excess coverage would apply to the same extent as the commercial general liability coverage. As a result, Defendants cite the following provisions, which have potential relevancy to the issues litigated on summary judgment:

**SECTION I -COVERAGES**

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any " suit" seeking those damages. However, we will have no duty to defend the insured against any " suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.   But:

      **(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period;

…

**2.** **Exclusions**

This insurance does not apply to:

b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement…

k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform   a

contract or agreement in accordance with its
terms.

This exclusion does not apply to the loss of use of other property arising out
of sudden and accidental physical injury to "your product" or "your work" after
it has been put to its intended use.

...

## SECTION V - DEFINITIONS

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

8. "Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:
   a. It incorporates "your product" or "your work", that is known or thought to be defective, deficient, inadequate or dangerous; or
   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses;
   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
   f. The use of another's advertising idea in your "advertisement" or
   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

17. "Property damage" means:

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 8

a.      Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18.     "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged.

        "Suit" includes:

a.      An arbitration proceeding in which such damages are claimed and  to  which the insured must submit or does submit with our consent; or

b.      Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our  consent.

21.     "Your product":

a.      Means:

(1)     Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a)     You;

(b)     Others trading under your name; or

(c)     A person or organization whose business or assets you have acquired; and

(2)     Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.      Includes:

(1)     Warranties or representations made at any time with respect to

the fitness, quality, durability, performance or use of "your product"; and

(2)    The providing of or failure to provide warnings or instructions.

**22.**    "Your work":

a.    Means:

(1)    Work or operations performed by you or on your behalf;  and

(2)    Materials, parts or equipment furnished in connection with such work or operations.

b.    Includes

(1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2)    The providing of or failure to provide warnings or instructions.

See *Commercial General Liability Form CG00010413*, p. 1-17.

### D. CGL Policies are Generally not Intended to Cover Claims for Economic Losses Associated with Defective Products or Workmanship

As an initial matter, it's important to frame Pasco's allegations against Telford in its lawsuit. Pasco asserts that Telford sold it potato seeds that had been excessively treated with rates and amounts of gibberellic acid such that when the potatoes sprouted and grew, they had inconsistent growth lengths and were otherwise unmarketable. In other words, Telford conducted work (preparation and treatment of potato seeds) and sold a product (the treated potato seeds) under a contract with Pasco, which allegedly resulted in economic losses to Pasco which it is now trying to recover from Telford. This is not the type of claim which has typically been considered covered under a CGL policy.

As an example, in *Hartford Accident & Indemnity Co. v. A.P. Reale & Sons, Inc.*, 644 N.Y.S.2d 442 (1996), the court found that there was no duty to defend or to indemnify where a

contractor failed to construct a sewage plan in accordance with the plans and specifications. The

court stated:

> We note that this disposition is in accord with the purpose of a
> commercial general liability policy which is to provide coverage for
> tort liability for physical damage to others and not for contractual
> liability of the insured for economic loss because the product or
> completed work is not what the damaged person bargained for.

*Id.* at 443. The fact that a CGL policy is not intended to cover an insured's products and

workmanship has also been explained, as follows:

> The great weight of that authority is to the effect that CGL policies
> cover the possibility that the goods, products, or work of the insured,
> once relinquished or completed, will cause bodily injury or damage
> to property other than to the product or completed work itself, and
> for which injury or damage the insured might be exposed to liability.
> The coverage is for tort liability for physical damages to others, and
> not for contractual liability of the insured for economic loss suffered
> because the completed work is not what the damaged person
> bargained for....

*R.N. Thompson & Associates, Inc. v. Monroe Guar. Ins. Co.*, 686N.E.2d 160,162(Ind. App, 1997).

Defendants submit that Pasco's suit against Telford primarily seeks contractual or statutory

liability for economic losses allegedly suffered because the chemically treated seed potatoes were

not what Pasco bargained for and did not achieve the expected outcome. The seed potatoes did not

cause physical damage to others or to property which was not the subject of the transaction between

the parties.

Whether defective potatoes which grew out of defective potato seeds constitutes an

economic loss or property damage was addressed by the Idaho Supreme Court in *Duffin v. Idaho

Crop Imp. Ass'n*, 126 Idaho 1002, 895 P.2d 1195 (1995). In *Duffin*, a farm operator purchased

potato seed from a manufacturer. The potato seed ended up being defective, in that the seed

contained the presence of a bacterial ring rot, which led to a potato crop which also had the bacterial

defect. The farmer suffered substantial lost revenue because of reduced yields and unmarketable

potato product. *Id*., at 1005. The Idaho Supreme Court determined that the defective potatoes which grew out of the defective seeds constituted economic loss, not property damage separate and apart from the property which was the subject of the transaction between the parties. *Id*., at 1200-1201.

Thus, under Idaho law, the potato crop which grows out of the potato seed is not a separate item of property. The crop arises out of the potato seed product and any defect in the seed which leads to a defect in the crop is all economic loss, not property damage. Thus, as an initial matter, a broad look at the nature of Pasco's allegations reveals that the type of liability/damages sought are generally not intended to be covered by a CGL Policy since such policies are not intended to cover economic losses.

### E. Discussion of Idaho Law in Connection with CGL Policies and Defective Product Cases

Idaho's appellate courts have otherwise not significantly analyzed the intersection of coverage under CGL policies with defective product claims. However, one case, *W. Heritage Ins. Co. v. Green*, 54 P.3d 948, 952 (Idaho 2002), is instructive. The purpose for the application of *Western Heritage* to the facts of this case is to demonstrate that a reviewing court needs to look at and analyze all relevant exclusions before determining whether coverage exists.

*Western Heritage* involved liability associated with a chemical application company who failed to properly apply fertilizer and weed control to farm ground prior to the planting of a potato crop. *Id*. At 949-50. After planting occurred, weeds began to appear, potato plants yellowed and started to die and the resulting potato crop had low yields and the crop itself was not marketable. *Id*. There were two potential areas of property damage – the damaged potato plants/crops and the field in which the crop was planted. *Id*.

The trial court's initial inquiry as to whether there was coverage for the loss under the insurance policy was to determine whether there was "property damage" caused by an "occurrence." The parties conceded that the non-application of chemicals constituted an occurrence within the meaning of the policy. 137 Idaho at 952. The issue litigated was whether claimed damage to the soil or potato plants constituted "property damage" for purpose of coverage under the CGL policy.

When only looking at the initial insuring language, the Idaho Supreme Court noted that the district court had found that the impaired potato crop constituted "property damage" under the policy since the crop was "tangible property" under the first section of the definition of "property damage." The discussion also included the district court's determination that the soil was arguably temporarily impaired, as it lacked nutrients and weed prevention for the growing season where the weed control chemical was misapplied. Id., at 952.

However, the Idaho Supreme Court found that analyzing only the initial coverage language was insufficient to determine coverage for the loss. The Court found that all applicable exclusions also had to be fully analyzed to determine coverage for the loss. *Id*. For instance, the Court found that Exclusion (k), which excluded coverage for property damage to property in the care, custody or control of the insured, applied to exclude coverage for the physical injury to both the soil and potato plants. *Id*., at 953.

The Idaho Supreme Court also found that other exclusions included in the insuring agreement prevented coverage for the loss above a $25,000 crop spraying activities endorsement, such as Exclusion (y), which excludes coverage for damage to the "target field" actually being sprayed, and Exclusion (m) (an "impaired property" exclusion), which excludes damage for loss of use of tangible property which had not been physically injured.  *Id*., at 953-54. Ultimately, the

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 13

Idaho Supreme Court clearly found that defective potato seed products which led to defective potato crops and temporary impairment of the soil in which the seeds were planted were not claims covered under a seed seller's CGL policy (other than the specific endorsement which had not been challenged in the case). *Western Heritage* also stands for the conclusion that reviewing courts must compare the actual liability allegations to the exclusions contained in the CGL policy to fully determine coverage.

### F. There is no Duty to Defend or Indemnify Claims Associated with the Alleged Defective Seed Potatoes Themselves or Resulting Potato Crop

Initially, coverage under Section I of the CGL form arises only in connection with claims for "bodily injury" or "property damage" caused by an "occurrence." It is undisputed that the Pasco Farming Complaint raises no claims associated with "bodily injury." As a result, the coverage issue exclusively involves whether the allegations by Pasco Farming constitute "property damage" caused by an "occurrence" and, if so, whether any such allegations are excluded by applicable policy exclusions.

The liability claims asserted by Pasco Farming against Telford relate to allegations associated with defective seed potatoes which were excessively treated with gibberellic acid. See *Pasco Complaint*, ¶¶ 18, 26,35, 47. For instance, Counts I-IV in the Pasco Farming Complaint all include allegations associated with defective crops that were grown due to alleged defective seeds. Further, a significant portion of the damages claimed by Pasco Farming in its Complaint are related to allegations that the potato seeds sold by Telford did not produce an expected outcome in terms of Pasco Farms' ability to sell fully grown and healthy potato crops from those seeds. See, e.g., *Pasco Complaint*, ¶¶ 19, 27, 37, 47.

Telford asserts that the allegedly defective seed potatoes and/or crops which grew out of them constitute an "occurrence" resulting in "property damage" because the alleged excessive use

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 14

of gibberellic acid on the seed potatoes was an "accident" and the resulting damaged crop constitutes "physical injury to tangible property."   However, these arguments ignore the application of several clear and unambiguous exclusions under the policy.

### a. Application of the Contractual Liability Exclusion

First, where Pasco Farming alleges in its Complaint that Telford's product did not meet its expectations, any warranties, any representations or any contractual requirements, such claims are specifically excluded under Exclusion 2.b., as Telford's policy is not intended to provide coverage for contractual liability undertaken by Telford. See, e.g., *Employers Mut. Cas. Co. v. Donnelly*, 154 Idaho 499, 300 P.3d 31 (2013) (contractual liability exclusions are intended to exclude coverage for contractual obligations the insured fails to undertake or otherwise breaches).

### b. Application of the "Your Product" Exclusion

Second, where Pasco Farming alleges that Telford's product was defective in that the seed potatoes were treated with excessive amounts of gibberellic acid and resulted in damaged crops, such claims are excluded under Exclusion 2.k., "Damage To Your Product." The seed potatoes were certainly Telford's "product."[1] Moreover, the exclusion applies both to claims associated with physical damage to the product itself and any physical damage <u>arising out of</u> the damaged/defective product. The allegedly defective potato crop would be the damage arising out of the allegedly defective product.

This exclusion reflects the intent of insurers to avoid the possibility that coverage under a CGL policy will be utilized to guarantee the quality of the insured's products or work. See, e.g., *Atain Specialty Ins. Co. v. Siegen 7 Devs., LLC*, 820 F. App'x 270, 273 (5th Cir. 2020) (citing 15

---

[1] 'Your Product" is defined as "any goods or products … manufactured, sold, handled, distributed or disposed of" by Telford. CGL Coverage Form, p. 17.

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 15

LA. CIV. L. TREATISE INSURANCE LAW & PRACTICE § 6:21 (4th Ed.). It has otherwise been stated that the risk intended to be covered is:

> the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.

See *Jacob v. Russo Builders*, 592 N.W.2d 271, 275 (Wis. Ct.App. 1999). The "your product" exclusion is not intended to shield an insured from economic losses stemming from its faulty product. *Couch on Insurance* § 129:16 (3d ed. 1995 & Supp.2008); *ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 472 F.3d 99, 119 (4th Cir .2006). Ultimately, this type of exclusion generally bars coverage for failure of the insured's product and any damages incidental to the product's failure. *Bright Wood Corp. v. Bankers Standard Ins. Co.,* 665 N.W.2d 544, 548 (Minn.Ct.App.2003).

A classic example of a situation where the "your product" exclusion would not apply is where a company manufactures a defective tire, which defect causes an accident and damages the vehicle upon which it was mounted. In such a case, there are more than mere economic damages. There is property damage to other property not directly related to the tire. However, this case presents the classic situation where the "your product" exclusion was clearly meant to apply. Here, the allegedly defective product actually comprises three interrelated elements – the seed potato, the plant which grows out of the seed and the crop which grows from the plant. The alleged defect in the ultimate potato crop arises directly from a defect with the seed. The only damages to Pasco are the economic losses associated with a potato crop with low yields or unmarketable potatoes. As set forth, Telford's CGL policy was not intended to cover the risk that Telford's seeds would not perform as expected or would cause economic losses to the end user of the seeds.

### c. Application of the "Your Work" Exclusion

Third, the allegations associated with Telford's excessive use of gibberellic acid on the seed potatoes also clearly implicates Exclusion 2.l., "Damage To Your Work." This exclusion works very similarly to the "your product" exclusion. *Hartford Accident & Indem. Co. v. Pac. Mut. Life Ins. Co.,* 861 F.2d 250, 253 (10th Cir.1988) (Hartford Accident & Indem. Co. v. Pac. Mut. Life Ins. Co., 861 F.2d 250, 253 (10th Cir.1988) (the "your work" exclusion is analyzed in the same manner as the "your product" exclusion.) This exclusion applies to claims of property damage arising out of Telford's work, which is defined as "work or operations" performed by Telford, "materials, parts or equipment furnished in connection with such work or operations" and including any "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use" of Telford's work. See *CGL Coverage Form*, p. 17. This exclusion specifically references the "products-completed operations hazard" which excludes all "property damage" occurring away from Telford's premises arising out of Telford's "product" and/or "work."

This exclusion would specifically prevent coverage for the allegations contained in Count II of Pasco Farming's Complaint, (Breach of implied/empress warranties regarding the appropriateness and fitness of the seed potatoes), Count III (Negligence in representing that Telford had specialized skill, performance, expertise in manufacturing seed potatoes), and Count IV (Strict liability associated with Telford's representations or warranties about its specialized skill and expertise in its work or the specialized nature and particular use of the seed potatoes).

### d. Application of the "Impaired Property" Exclusion

Fourth, Pasco's allegations of defective or damaged potato crops (including excessive sprouting, inconsistent tuber lengths, small tuber size, etc.) would clearly not be covered under the

subject Policy pursuant to Exclusion 2.m., "Damage to Impaired Property Or Property Not Physically Injured." This exclusion is commonly called the "impaired property" exclusion, and is "included in a policy to prevent the insured from claiming economic losses resulting from the insured's work or work product." *Transcon. Ins. Co. v. Ice Sys. of Am., Inc.*, 847 F. Supp. 947, 950 (M.D. Fla. 1994). The exclusion applies in a situation where, for example, the insured's work is incorporated into other property and that other property is not able to be used because of a defect in the insured's work." *Fid. & Deposit Co. of Maryland v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1225 (D. Kan. 2002).

Under the Policy, "impaired property" is tangible property, other than Telford's seeds, which cannot be used or is less useful because such property incorporates Telford's allegedly defective, inadequate or deficient product or work, and/or tangible property which cannot be used or is less useful because Telford failed to fulfill terms of a contract or agreement or otherwise sold a defective product. See *CGL Coverage Form*, p. 14. This exclusion has importance in relation to Telford's argument that the "your product" or "your work" exclusions potentially do not apply because the potato crop which grew out of Telford's seeds represent separate property of Pasco rather than the same property as the seeds themselves.

To the extent the Court concludes that the potato crop is separate property from the seeds, this exclusion would clearly apply to the economic injury related to the allegedly unmarketable or unsellable potato crop. After all, that crop incorporated Telford's allegedly defective seeds and the crop is allegedly not sellable because of a defect in either Telford's work or product. Regardless of whether Pasco Farming claims that the potato crop was physically injured, less sellable or unable to be sold, all such damage claims are excluded under the impaired property exclusion. See also

*Heritage Ins. Co. v. Green*, 54 P.3d 948, 952 (Idaho 2002) (applying an "impaired property" exclusion to a claim involving defective potato crops and temporarily impaired farm land).

Once again, the insuring agreement at issue is not intended to cover economic losses arising out of failures in Telford's products or work which resulted in a defective end product (such as the potato crop grown by Pasco Farming). All claims that the seed potatoes ended up growing crops which were defective such that they did not grow correctly, did not produce expected yields, did not grow to expected sizes, or did not meet contractual requirements are excluded from coverage under the Policy.

### G. There is no Duty to Defend or Indemnify Claims Associated with Loss of Use of the Agricultural Land Upon Which the Seed Potatoes Were Planted

The only remaining allegations in the Pasco Farming Complaint which would need to be analyzed for potential coverage is the allegation that Telford's allegedly defective seed potatoes caused damage in terms of loss of use of the agricultural land upon which the seed potatoes were planted. See, e.g., *Pasco Farming Complaint*, ¶¶ 19, 27, 37, 47. Of note, Pasco Farming <u>does not</u> allege anywhere in its pleading that the allegedly defective seed potatoes damaged the soil in any way. Rather, the allegation is solely that, since the alleged defective seeds resulted in a defective crop, Pasco Farming lost the use of its agricultural land as a means of growing crops during that particular growing season.

The agricultural land is clearly separate property than the potato seeds or crop. However, it is clear that the only damage is economic is nature. Again, the *Western Heritage* case is instructive. One of the claimed damages in that case for which the insured sought coverage under the insurance policy was the claim that there was at least a temporary loss of use of the soil, which suffered from loss of nutrients and/or weed prevention. *Western Heritage*, 54 P.3d at 952. As to the agricultural land, the Idaho Supreme Court found that the "impaired property" exclusion was

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT-** 19

dispositive. The Court concluded that the misapplication of chemicals to the growing crop caused a "loss of use of tangible property" that included the loss of the use of the soil, the "impaired property" exclusion prevented coverage. *Id*., at 954.

The Idaho Supreme Court's analysis in *Western Heritage* has clear application to this case. Pasco's farm land constitutes "property that has not been physically injured." *Policy*, Exclusion (m.). Any loss of use of that land came about exclusively because of either a (1) deficiency in Telford's seed product, or (2) a failure by Telford to deliver seeds which met its own specifications or Pasco's contractual requirements. *Id*. Moreover, the farm land also constitutes "impaired property" under Exclusion (m.) because it represents tangible property other than the seed product which was less useful because it incorporated Telford's allegedly defective product and the farm land could be fully restored to use by the removal of the allegedly defective product. *Id*. Defendants contend that Idaho's appellate courts would view the loss of use of agricultural land claim in this case in the same manner as the Idaho Supreme Court did in *Western Heritage*.

There are not a significant number of cases in other jurisdictions which touch on the specific issues litigated in this matter associated with loss of use of agricultural land in connection with the "impaired property exclusion." However, there are courts who have also recognized that impaired property exclusions very similar in wording to Exclusion 2.m. here generally apply to claims where a defective product causes a loss of use of property or somehow impairs property other than the product sold by the named insured. For instance, in *Heldor Indus., Inc. v. Atl. Mut. Ins. Co.*, 551 A.2d 1001, 1002 (N.J. App. Div. 1988), a swimming pool components manufacturer allegedly sold a defective product used to secure swimming pool liners and provide non-slip surfaces around pools. *Id.* The court found that this policy's exclusion m barred coverage because the alleged damage occurred only to Heldor's product itself. *Id.* at 1004. Moreover, the only

damage to others' property consisted of reduced value and aesthetics (for which no claims were made), and even then, the remedy was simply the replacement of Heldor's product. *Id.* at 1004-05. As a result, the exclusion applied and no duty to defend attached for these claims. *Id.* at 1005-06.

One court noted that the application of a similar version of Exclusion (2.m.) may also include consideration of whether removal of the insured's product would be sufficient to restoring the impaired property to its former use. See, e.g., *Oscar W. Larson Co. v. United Capitol Ins. Co.*, 845 F. Supp. 445, 446 (W.D. Mich. 1993), aff'd, 64 F.3d 1010 (6th Cir. 1995) (similar version of exclusion not applied in case of defective pipe jacket containment system, as replacement of pipe jacket would not have rectified environmental damage to soil caused by pipe leak.) Another court, *Transcontinental Insurance Company v. Ice Systems of America, Inc.*, 847 F. Supp. 947 (M.D. Fla. 1994), invoked the exclusion to prevent coverage where the primary damages due to the failure of a product was economic in nature. There, the court found Exclusion M prevented coverage for an economic loss occasioned by a contractor who had failed to property freeze a portable hockey rink for an NHL exhibition game, causing the game to be canceled.

Ultimately, in this case, the agricultural land upon which Telford's seed potatoes were planted was not physically injured (by reference to the allegations in the Pasco Farming Complaint). The land may arguably have been impaired, in that Pasco Farming temporarily lost economic value in the land when Telford's seed potatoes were planted because the land could not be used for its intended purpose or was less useful than expected with those seed potatoes planted. This is the exact scenario the "impaired property" exclusion was meant to address – the purely economic injury to other tangible property due to a defect in the product. Defendants submit that there is no coverage for Pasco Farming's arguably impaired agricultural property that was not

physically injured because such impairment allegedly arose due to a defect/deficiency in Telford's product or work (or failure by Telford to meet contractual requirements) and such impairment could be resolved simply by removal of the allegedly offending potatoes without any remediation to the soil necessary.

### H.  There can be no Breach of Contract as a Matter of Law

Telford's breach of contract claim is premised on the idea that the Court will agree with its claims in the declaratory judgment count and, as a matter of consequence, find that Defendants breached the contract by failing to provide defense/indemnity coverage to Telford upon the filing of Pasco Farming's Complaint. Since Defendants have established above that they are entitled to summary judgment with respect to the declaratory judgment claim, there would be no separate legal basis for the Court to find that a breach of contract occurred. As a result, summary judgment in Defendants favor on this count is also appropriate.

### I.  The Bad Faith Claim is Subject to Dismissal Regardless of the Court's Determination of the Duty to Defend/Indemnify

Telford alleges in its bad faith cause of action that Defendants have intentionally and unreasonably denied defense coverage in relation to the Pasco Farming lawsuit in a manner which cannot constitute a good faith mistake and under circumstances such that the claim for coverage is not fairly debatable. See *Petition for Declaratory Judgment*, ¶¶ 52-55. Defendants contend that there is no viable claim for bad faith even if the Court disagrees with Defendants' coverage position on summary judgment.

In order for a first-party insured to recover on a bad faith claim, the insured must show: "1) the insurer intentionally and unreasonably denied or withheld payment; 2) the claim was not fairly debatable; 3) the denial or failure to pay was not the result of a good faith mistake; and 4) the resulting harm is not fully compensable by contract damages." *Weinstein v. Prudential Prop. &*

*Cas. Ins. Co.*, 149 Idaho 299, 315, 233 P.3d 1221, 1237 (2010). The term "fairly debatable" means that, at the time the claim was under consideration, there existed a legitimate question or difference of opinion over the eligibility, amount or value of the claim. *Id.*; see also *Robinson v. State Farm Mut. Auto Ins. Co.*, 137 Idaho 173, 177-78, 45 P.3d 829, 833-34 (2001).

Initially, there is no evidence from which this Court could conclude that the denial of the claim was not at least fairly debatable. As set forth above, Telford's policy is not intended to provide coverage where the primary allegations are related to Telford failing to meet contractual requirements and where the primary damage is the economic injury allegedly resulting to a third party because that product/work does not perform as expected. Defendants' coverage position in this matter is consistent with a long line of appellate cases in multiple jurisdictions which generally find that there is no coverage under a CGL policy for the economic injury suffered due to a defect in the insured's work or products.

Moreover, Defendants relied on a fairly analogous case in *Western Heritage* in determining that the allegedly impaired potato crop or farm land were not claims covered under Telford's policy. As a result, even if the Court does not agree with Defendants' coverage position, it can certainly find, as a matter of law, that Defendants did not take a coverage position that was without a legitimate question or difference of opinion. Plaintiffs certainly have not been able to point to controlling authority in Idaho which would have clearly and unambiguously required Defendants to provide defense/indemnity coverage under these circumstances.

Likely more dispositive on summary judgment is the fact that Telford also has not established that the resulting harm it allegedly suffered is not fully compensable by contract damages. The only damages Telford has allegedly suffered at this point is that it has been defending the Pasco Farming lawsuit on its own without Defendants' paying for such a defense.

The alleged failure to pay defense costs does not constitute extra-contractual damages. If the Court were to find that coverage exists under the Policy with respect to the allegations asserted by Pasco Farming, Telford would be made whole by an order requiring Defendants to pay defense costs previously incurred and those incurred until final resolution of the lawsuit. Since there are no extra-contractual damages at issue, the bad faith claim fails as a matter of law.

## III.

## <u>CONCLUSION</u>

Defendants have established that there is no coverage under Telford's policy for the claims asserted in the Pasco Farming Complaint. As a result, Telford's request for summary judgment in this matter should fail a matter of law.

DATED this 4th day of August, 2022.

ANDERSON, JULIAN & HULL LLP

By_____
     Robert A. Anderson, Of the Firm
     Robby J. Perucca, Of the Firm
     Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August, 2022, I filed the foregoing **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | | |
|---|---|---|
| David P. Claiborne | ☐ | U.S. Mail, postage prepaid |
| SAWTOOTH LAW OFFICES, PLLC | ☐ | Hand-Delivered |
| 1101 W River St, Ste 110 | ☐ | Overnight Mail |
| Boise, ID 83702 | ☐ | Facsimile |
| T:      (208) 629-7447 | ☐ | E-Mail |
| F:      (208) 629-7559 | ☒ | CM/ECF Filing |
| E:      david@sawtoothlaw.com | | |
|          brian@sawtoothlaw.com | | |
| *Attorneys for Plaintiffs* | | |

_____
/s/ Robby J. Perucca
Robby J. Perucca