DAVID P. CLAIBORNE
[Idaho State Bar No. 6579]
BRIAN A. FARIA
[Idaho State Bar No. 10798]
SAWTOOTH LAW OFFICES, PLLC
Golden Eagle Building
1101 W. River St., Ste. 110
Boise, Idaho 83702
Telephone: (208) 629-7447
Facsimile: (208) 629-7559
E-mail: david@sawtoothlaw.com
        brian@sawtoothlaw.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **MICHAEL TELFORD**, an individual; **TELFORD SUN VALLEY SEED**, assumed business name of Michael Telford and Shannon Telford; **TRIPLE T FARM**, assumed business name of Aaron Telford and Ryan Telford; **TRIPLE T FARMS PARTNERSHIP**; **TELFORD LANDS LLC**; **TELFORD AG LLC**; **MIKE TELFORD VENTURES LLP**,<br><br>Plaintiffs,<br><br>vs.<br><br>**WEST AMERICAN INSURANCE COMPANY**, an Indiana corporation; **LIBERTY MUTUAL GROUP, INC.**, a Massachusetts corporation,<br><br>Defendants. | Case No. 4:22-cv-00043-BLW<br><br>**REPLY IN SUPPORT FOR MOTION FOR SUMMARY JUDGMENT** |

**REPLY**

I.   **The Damages Sought Are Not Limited to Economic Losses**

Telford does not dispute that the Idaho Supreme Court adheres to a general rule prohibiting the recovery of purely economic losses in all negligence actions. *Duffin v. Idaho Crop Imp. Ass'n*, 126 Idaho 1002, 895 P.2d 1195 (1995). However, Telford asserts that the damages sought in the Pasco Farming complaint are not purely economic loss. In *Duffin*, the alleged losses claimed by the potato grower consisted of (1) the excess of the price paid for the seed because it was "certified;" (2) lost revenues which resulted from reduced yields; and (3) lost revenues which resulted from having to sell the crop immediately upon harvest, rather than by way of more lucrative contracts the [insured] had already negotiated, or by waiting until the open market prices were higher. *Id.* at 1005. The Court found these claims to be purely economic loss, and denied recovery. *Id.* at 1008. However, there are exceptions to that general rule, *Duffin*, 126 Idaho at 1007. These exceptions may distinguish the current case before this Court from *Duffin*.

a.   *Losses Parasitic to an Injury to Person or Property*

First, economic loss is recoverable in tort as a loss parasitic to an injury to person or property. *Id.* (citing *Just' s, Inc. v. Arrington Constr. Co.*, 99 Idaho 462, 583 P.2d 997 (1978). The Idaho Supreme Court has defined economic loss as "including 'costs of repair and replacement of defective property which is subject of the transaction, as well as the commercial loss for inadequate value and consequent loss of profits or use. *Id.* (citing *Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft Co.*, 97 Idaho 348, 351, 544 P.2d 306, 309 (1975). Conversely, "property loss" encompasses "damage to property other than that which is the subject of the transaction." *Id.* The alleged damages suffered in Pasco Farming's Complaint includes "loss of use of its potato crops, the loss of use of the agricultural land upon which the

potatoes were planted, a reduction in crop yields, and/or other incidental and consequential damages." *Declaration of Counsel, Exhibit B* at ¶19, 27, 37, 47. Minimally, the alleged damages suffered include loss "parasitic" to the loss of use of the agricultural land upon which the potatoes were planted.

Furthermore, the property subject to the transaction is the potato seed. Pasco Farming does not claim damages suffered for the potato seed purchased, but rather the "potato crops." *Id*. In *W. Heritage Ins. Co. v. Green*, the plaintiff sought "economic losses *resulting from* the resulting from the diminution in yield." 137 Idaho 832, 834, 54 P.3d 948, 950 (2002). The Supreme Court agreed with the district court that the damage to the potato crop was a "physical injury" to "tangible property," and therefore constituted property damage. *Id.* at 836. The potato plants were yellowed and had poor root systems and, when harvested, the few potatoes produced were slimmer, rougher, blemished and hooked on the ends. Thus, the damages alleged here are similar, as the damage occurred to the crops. Any economic loss claimed by Pasco are "parasitic" to injury to property.

The Eighth Circuit applied similar reasoning in *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 794–96 (8th Cir. 2005). The insured in *Ferrell* produced plastic film that was used on the ground to protect growing plants. *Id.* at 393 F.3d at 789. Tomato growers purchased the film, which deteriorated, leaving large holes in some places. *Id.* This made it difficult to irrigate the plants properly and allowed rainwater to splash dirt on the plants. *Id.* As in *Green*, the defect in the insured's product caused damage to the plants themselves, resulting in "stunted plants that produced less fruit, and the tomatoes that did grow were smaller than normal and suffered from sunburn, rain damage, and cracked stems." *Id.* The growers produced evidence that the "quality of the crop with the defective film was worse than if no film had been used at all." *Id.* The

Eighth Circuit rejected this argument, concluding that the growers' claims sought damages caused by physical injury to tangible property because "[t]he tomato plants were damaged as a result of [the insured]'s defective film. *Id.* The plants were stunted, undersized, sunburned, or waterlogged, and they were cracked in parts." *Id.* at 795. On those facts, the court determined that the growers' claimed "lost profits or diminished gross receipts" were a measure of damages flowing from the covered physical injury to the plants, which "is distinct from the question whether there was 'property damage' under the policy."). [1]

In this case, Pasco Farming's potato crops suffered from "excessive sprouting, inconsistent tuber lengths, and small tuber size. *Id.* at ¶13. In Idaho, the property damage is determined when it has manifested. *National Aviation Underwriters, Inc. v. Idaho Aviation Center, Inc.*, 471 P.2d 55, 57 (Idaho 1970); *Parma Seed, Inc. v. General Ins. Co. of America*, 496 P.2d 281, 286 (Idaho 1972). Damage to plants and crops are distinct and separate from damage to the original seed. *St. Paul Fire & Marine Ins. Co.*, 365 F.2d at 368. Therefore, consistent with the Court holdings in Idaho and other jurisdictions, any economic losses alleged are parasitic to the property actually damaged. The Court must read the complaint broadly, which is not limited to economic losses. Therefore, Defendants should provide coverage and indemnify Telford.

   b. **Special Relationship**

Another exception to the economic loss rule is applicable in cases involving a "special relationship" between the parties. *Id*. at 1008. Pasco Farming alleges a special relationship exists. *Declaration of Counsel,* Exhibit B at ¶34. Therefore, the allegations read in part, reveal the

---

[1] *See also Triple U Enters. v. N.H. Ins. Co.*, 576 F.Supp. 798, 806–07 (D.S.D.1983), aff'd, 766 F.2d 1278 (8th Cir.1985); *Farm Bureau Mut. Ins. Co. v. Earthsoils, Inc.*, 812 N.W.2d 873 (Minn. Ct. App. 2012) (citing the aforementioned cases).

potential for liability. *County of Kootenai v. Western Cas. Sur. Co.*, 113 Idaho 908, 910, 750 P.2d 87, 89 (1988). Accordingly, the economic loss rule does not necessarily prevent liability in this action, and potential liability exists.

    II.      **Impaired Property Exclusion**

The plain reading of Exclusion (m) does not exclude coverage. Exclusion (m) states:

> **m. Damage to Impaired Property or Property Not Physically Injured**
> "Property damage" to "impaired property" or property that <u>has not</u> been physically injured, arising out of
>     **(1)** A defect, deficiency, or inadequacy or dangerous condition in "your product" or "your work"; or
>     **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

What is missed in Defendants analysis of Exclusion (m) is that, the "property damage" must be to "impaired property" or property <u>that has not been physically injured</u>… In doing so, Defendants misinterpret *Green* in its analysis.

Specifically, the Idaho Supreme Court found that there was physical injury to both the soil and the plants. *Green*, 137 Idaho at 837. The Court ultimately reverses the district court's decision based on an exclusion to property damage to property "in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control." *Id.* at 836. However, the Court then states that "[e]ven if we were to read the policy and facts to conclude there was damage *only to* the potatoes, other exclusions to the policy apply. *Id.* It is after this qualification that the Court states "[b]ecause this Court concludes the misapplication caused a "loss of use of tangible property" that includes the loss of the use of soil, Exclusion (m) excludes

REPLY IN SUPPORT FOR MOTION FOR SUMMARY JUDGMENT – Page 5 of 12

coverage." *Id.* at 838.² Therefore, Exclusion (m) only applies to "Property damage" defined in 17(b). Definition 17(a) defines "property damage" as physical injury to tangible property *includes all resulting loss of use of that property*, and therefore property damage under 17(a) is not excluded under Exclusion (m).

In this case, the Pasco Farming Complaint the suffered damages alleged include "the loss of use of its potato crops, the loss of use of the agricultural land upon which the seed potatoes were planted, a reduction in crop yields, and other incidental and consequential damages." Therefore, Paso Farming seeks damages for property that <u>has</u> been physically injured.

Additionally, the "property damage" is not to "impaired property." Definition 8 defines "impaired property" as:

> Tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>     a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>     b. You have failed to fulfil the terms of a contract or agreement
> *If such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.*

*Declaration of Counsel, Exhibit G* (emphasis added). Here, the potato crop and the agricultural land cannot be restored by the repair, replacement, adjustment or removal of a potato seed. The germination process transforms the seed to a completely separate entity. *See St. Paul Fire & Marine Ins. Co. v. Northern Grain Co.*, 365 F.2d 361, 368 (8th Cir.1996). Therefore, after germination, the seed can no longer be modified. Thus, the "impaired property" exclusion does not apply.

---

² Defendants rely on this sentence throughout their response without the preceding qualification. *See Memorandum In Opposition to Plaintiff's Motion for Summary Judgment*, at 12-14, 18-20, 23.

REPLY IN SUPPORT FOR MOTION FOR SUMMARY JUDGMENT – Page 6 of 12

### III. Other Exclusions

#### a. Contractual Liability Exclusion

Telford asserts that each of Pasco Farming's claims are sough in the alternative, pursuant to Idaho Rule of Civil Procedure 8. Thus, there is nothing that prohibits Pasco Farming from recovering on its other theories, such as negligence. Therefore, there is at least one theory of recovery within the policy coverage has been pleaded, and the insurer "must defend, and its defense obligations will continue until such time as the claim against the insured is confined to a recovery that the policy does not cover." *Hirst v. St. Paul Fire Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440, 445-46 (Ct.App. 1984). Therefore, Defendants are minimally obligated to defend Telford because potential liability exists for Pasco Farming's claim for negligence.

#### b. "Your Product" & Your Work Exclusion

Defendants are incorrect in stating that the "your product" exclusion applies in this instance. Exclusion (k), the "your product" exclusion, excludes "[p]roperty damage' *to* 'your product' arising out of it or any part of it." *Declaration of Counsel, Exhibit G*. The "your product" exclusion provides coverage for damages limited *to* the product. It excludes coverage of an insured for providing a faulty or deficient product to third parties, and the risk that the insured will be sought for repair or replace its faulty product as a result. *See Netherlands Insurance v. Main Street Ingredients, LLC*, 745 F.3d 909 (8th Cir. 2014) (exclusion did not apply because Main Street "seeks indemnity not for damage to its milk, ... but for damage to the [Malt–O–Meal] oatmeal caused by the inclusion of the milk); *Holsum Foods Div. of Harvest States Coop. v. Home Ins. Co.*, 162 Wis.2d 563, 469 N.W.2d 918, 920 (Wis.Ct.App.1991); *Omega Products Corp. v. Liberty Mut. Ins. Co.*, 49 F. App'x 745, 747 (9th Cir. 2002) ("Based on the underlying claim and the extrinsic evidence available to Liberty at the time of tender, there was the potential

that ATCO sought recovery for property damage separate from the damage to the Akroflex, i.e., damage to buildings. Thus Liberty had a duty to defend until it could prove that there was no possibility that ATCO's claim might be covered.").

The cases cited by Defendants are inapposite. In *Bright Wood Corp. v. Bankers Standard Ins. Co.*, the Minnesota Court of Appeals stated that

> "the damage here is based solely on [the insured's] defective product. The incidental damage to the finish, hardware, and weather-stripping was incurred only in order to make repairs. No evidence was introduced of damage to any product other than Bright Wood's components, except insofar as the non-Bright Wood components incurred damage during the repair process.

665 N.W.2d 544, 548 (Minn.Ct.App.2003). Additionally, the partial excerpt cited by Defendants from *Jacob v. Russo Builders*, explicitly provides for coverage in a similar situation at hand, stating:

> The risk *intended to be insured* is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to *property other than to the product* or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. The coverage is for tort liability for *physical damages to others* and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

592 N.W.2d 271, 275 (Wis. Ct.App. 1999). Pasco Farming does not allege damages for the potato seed, but rather the potato crop and agricultural property. The seed is separate, and Pasco Farming does not seek damages incidental to the seed. Therefore, the "your product" exclusion does not apply.

Telford agrees that the "your work" exclusion is analyzed in the same manner. However, Telford never performed any work for Pasco Farming. According to the Policy, "your work" means:

(1) Work or operations *performed by you* or on behalf of you; *and*
(2) Materials, parts or equipment furnished in connection with such work or operations.

*Declaration of Counsel, Exhibit G.* It further includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability or performance or use of "your work"' and
(2) The providing of or failure to provide warnings or instructions.

*Id.* The Defendants ignore the conjunction "and". The materials, parts or equipment" identified in this exclusion must be furnished in connection with such work, i.e. roofing material furnished by a roofing contractor. Telford did not perform any services. Rather, it only provided potato seed. Thus, because Telford did not perform any work or operations, the "your work" exclusion cannot apply.

    IV.    **Telford's Damages to Property Is Not Limited to That Particular Growing Season**

Defendants attempt to limit the damages sought by Pasco Farming by reading words into the Pasco Farming Complaint. Specifically, Defendants argue that the allegation in the complaint is "solely that, since the alleged defective seeds resulted in a defective crop, Pasco Farming lost the use of its agricultural land as a means of growing crops *during that particular growing season*. *Opposition*, at 19 (emphasis added). Upon review of the four corners of the Pasco Farming Complaint, nowhere does Pasco Farming limit its damages to its agricultural land to that particular growing season. Rather, the Pasco Farming Complaint alleges "significant and extensive damages, including the loss of use of its potato crops, the loss of use of the agricultural

land upon which the seed potatoes were planted, a reduction in crop yields, and or other incidental and consequential damages." *Declaration of Counsel, Exhibit B at ¶19*, 27, 37, 47. Therefore, when read broadly, the potential liability exists for the continued loss of use of agricultural land as there is no limitation as to the extent of damage to the land.

V. **Breach of Contract**

Since Telford has established above that it is entitled to summary judgment with respect to the declaratory judgment claim, Defendants have breached their contract with Telford. Accordingly, summary judgment in favor of Telford on this count in appropriate.

VI. **Bad Faith**

As set forth above, Defendants' denial of coverage is premised on the misapplication or misinterpretation of Idaho case law. All property damage alleged in the Pasco Farming Complaint is the physical injury to tangible property. As set forth herein, the entire analysis with respect to *Green*, which is in large part the foundation for Defendants' basis for its denial, is incorrect. Therefore, there was no *legitimate* question or difference of opinion over the eligibility of the claim. *Weinstein v. Prudential Prop. & Cas. Ins. Co.*, 149 Idaho 299, 315, 233 P.3d 1221, 1237 (2010). The analysis provided in response with respect to the "your product" exclusion is also incorrect, and excludes the context of each respective case. Thus, the claim was not fairly debatable.

Furthermore, the denial was unreasonable. In addition to the claim not being fairly debatable, the Defendants unreasonably denied the claim. Defendants waited until after a responsive pleading to Pasco Farming's Complaint was due to respond. In light of these facts, it cannot be said that the denial was a result of a good faith mistake.

Moreover, a tort cause of action may be held against an insurer who negligently delays in settling an insurance claim in circumstances presented in the instant case. A bad faith claim is not a breach of contract claim. *Robinson v. State Farm Mut. Auto. Ins. Co.*, 137 Idaho 173, 45 P.3d 829, 834 (Idaho 2002). Additionally, the proper procedure for the insurer to take is to evaluate the claims and determine whether an arguable potential exists for a claim covered by the policy; if so, then the insurer must immediately step in and defend the suit. *Kootenai Cnty. V. Western Cas. And Sur. Co.,* 113 Idaho 908, 910-911, 750 P.2d 87, 99-100 (1988) (citing *State of Idaho v. Bunker Hill Co.*, 647 F.Supp. 1064, 1068 (D. Idaho 1986)). At the same time, if the insurer believes that the policy itself provides a basis, i.e., an exclusion, for noncoverage, it may seek declaratory relief. *Id.* However, this does not abrogate the necessity of defending the lawsuit until a determination of noncoverage is made. *Id*. The insurer should not be allowed to "guess wrong" as to the potential for coverage. *Id.* Therefore, the damages sought for defense are alleged in tort, and they are awardable under Telford's claim for bad faith. Accordingly, summary judgment should be granted on Telford's claim for bad faith.

## CONCLUSION

The Court must lean in favor of coverage in reading the four corners of the complaint. The Pasco Farming complaint alleges significant property damage including the physical injury to property. These allegations should be read broadly and exclusions not stated with specificity cannot be inferred. As such, the Court should grant Telford's motion for summary judgment.

**DATED** this 18th day of August, 2022.

                                        SAWTOOTH LAW OFFICES, PLLC

                                        by: */s/ Brian A. Faria*
                                        Brian A. Faria

REPLY IN SUPPORT FOR MOTION FOR SUMMARY JUDGMENT – Page 11 of 12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following on this 18th day of August, 2022, by the following method:

| | |
|---|---|
| **ROBERT A. ANDERSON**<br>**ROBBY J. PERUCCA**<br>**ANDERSON, JULIAN & HULL LLP**<br>C.W. Moore Plaza<br>250 South Fifth Street, Suite 700<br>PO Box 7426<br>Boise, Idaho 83707-7426<br>Telephone: (208) 344-5800<br>Facsimile: (208) 344-5510<br>E-Mail: randerson@ajhlaw.com<br>            rperucca@ajhlaw.com<br>iCourt/e-file: service@ajhlaw.com | [__] U.S. Mail, postage prepaid<br>[__] Hand-Delivered<br>[__] Overnight Mail<br>[__] Facsimile<br>[__] E-Mail<br>[_X_] iCourt/e-file |

*Attorneys for Defendants*


                                                        _/s/ Brian A. Faria_
                                                             Brian A. Faria